IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY HILL, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) CIVIL ACTION NO. |
| VS. | ) |
| | ) |
| OAKSTREET HEALTH, | ) HON. |
| | ) |
| DEFENDANT. | ) |
| | ) |
| | ) |
| | ) |

## COMPLAINT

PLAINTIFF TIMOTHY HILL, by and through his attorneys, Carla D. Aikens, P.L.C., submit the following Complaint against OAKSTREET HEALTH.

## JURY DEMAND

COMES NOW PLAINTIFF TIMOTHY HILL and hereby makes his demand for trial by jury.

## JURISDICTION

1. At all times relevant to this complaint, Plaintiff Timothy Hill was a resident of Wayne County in the State of Michigan.

2. Defendant Oakstreet Health is a domestic for profit corporation, with a continuous and systematic place of business located at 27155 Cherry Hill Rd, Dearborn Heights, MI 48127, in Wayne County.

3. This action is brought in this Court on the basis of federal question jurisdiction, pursuant to Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.

4. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's

state law claims.

## **VENUE**

5. Venue is proper in the Eastern District of Michigan because the unlawful employment actions giving rise to Plaintiff's claims occurred in this District.

## **STATEMENT OF FACTS**

6. Plaintiff is an African American man.

7. On January 12, 2018, Defendant hired Plaintiff to work for Defendant in the capacity of an Outreach Associate/Account Executive.

8. Plaintiff's starting rate as an Outreach Associate/Account Executive was $35,000 per year.

9. Plaintiff's Director while working as an Outreach Associate/Account Executive was LaShawnda Denson.

10. As part of his role, Plaintiff depended upon leads for "welcome visits," which consisted of potential clients coming into the facility to receive a tour and complimentary checkup by the doctor. Once the welcome visit was completed, Outreach Specialists were paid $150, a crucial makeup of their base pay.

11. Not meeting the monthly goal for welcome visits could bar an Outreach Specialist from receiving a promotion.

12. From approximately January 2018 through March 2018, Plaintiff noticed that Denson only gave the women in the department leads towards welcome visits, as opposed to the men.

13. By giving the women in the department leads towards welcome visits and patients, Denson would ensure that the women were meeting their monthly goal and avoiding write-ups.

14. In March of 2019, Denson removed Plaintiff from all events so that he was unable to receive any new leads.

15. Events played an essential part of Plaintiff's job because that is where each Outreach Specialist was able to solicit leads for Defendant.

16. Plaintiff believed each Outreach Specialist was responsible for obtaining their own leads through the events organized by Defendant, or by planning their own event.

17. Around April 2019, two female coworkers admitted to Plaintiff that Denson was giving them leads for patients instead of equally distributing them.

18. Denson would organize with the Community Manager, Leilani Vance, to put the women on the events that were well attended and put him on events that did not result in any new leads.

19. Denson would bring the women in the department Starbucks and frequently take them out to lunch.

20. At the same time, Denson intentionally excluded Plaintiff from dining with the rest of the department for lunch.

21. After weekly meetings with Denson, Plaintiff was coerced into believing that he was going to lose his job and that he should quit.

22. Plaintiff was discouraged by Denson from seeking a promotion.

23. In January 2020, a different female co-worker was able to miss her target goal for three consecutive months without a write-up.

24. Around March 2020, an incident occurred wherein Plaintiff was verbally abused with racial slurs and physically assaulted.

25. Plaintiff alerted the practice manager, Bruce, and the Director, Brandon, to the incident but they took no action.

26. The man who assaulted and verbally abused Plaintiff was still allowed to be in the building.

27. Plaintiff escalated the incident to HR; however, nothing was done on his behalf.

28. Around late July or early August 2020, Plaintiff applied for a transfer due to the unresolved racial incident but was denied.

29. Plaintiff was informed that the reason he was denied a transfer was because "Demario Trent thought about it over the weekend and decided against it."

30. Plaintiff then escalated the racial incident to HR corporate, who directed him to regional HR, in August 2020.

31. Plaintiff was terminated on August 25, 2020.

32. Plaintiff believes that he was subjected to discrimination based on his race.

33. Plaintiff believes that he was subjected to discrimination based on his sex.

34. Plaintiff believes that he was subjected to different terms and conditions of employment.

35. Plaintiff believes that he was denied promotions and discharged in retaliation for engaging in a protected activity in violation of Title VII of the Civil Rights Act of 1964, as set forth more fully below.

36. Plaintiff filed a charge with the EEOC on the basis of race and gender discrimination, and retaliation.

37. The EEOC issued a notice of right to sue letter on December 30, 2021, and this lawsuit followed.

38. Plaintiff requests relief as described in the Prayer for Relief below.

### COUNT I
### DISCRIMINATION ON THE BASIS OF GENDER IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e et seq. ("Title VII")

39. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

40. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

41. Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass or discriminate an employee on the basis of that employee's gender.

42. Plaintiff is an African American man, and, as a result, is a member of a protected class pursuant to Title VII.

43. Plaintiff was subjected to offensive communication and/or conduct on the basis of his membership in this protected class.

44. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

5

45. The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

46. As a proximate result of the Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

47. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

48. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT II
### DISCRIMINATION/HARASSMENT ON THE BASIS OF SEX/GENDER IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")

49. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

50. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, ELCRA.

51. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate an employee on the basis of that employee's sex or gender.

52. Plaintiff is a man, and, as a result, is a member of a protected class pursuant to ELCRA.

53. Plaintiff was subjected to communication and conduct on the basis of their status as a member of this protected class including but not limited to being constantly undermined, watched, and criticized, and eventually terminated, unlike their male counterparts.

54. The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

55. As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and have suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

56. Plaintiff has been damaged by Defendant in an amount to be proven at trial.

57. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT III
## DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF TITLE VII

58. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

59. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

60. Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass or discriminate an employee on the basis of that employee's race.

61. Plaintiff is an African American Man, and, as a result, is a member of a protected class pursuant to Title VII.

62. Plaintiff was subjected to offensive communication and/or conduct on the basis of his membership in this protected class.

63. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

64. The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

65. As a proximate result of the Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

66. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

67. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV
## DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE ELCRA

68. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

69. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, ELCRA.

70. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate an employee on the basis of that employee's race or skin color.

71. Plaintiff is an African American man, and, as a result, is a member of a protected class pursuant to ELCRA.

72. Plaintiff was subjected to offensive communication and/or conduct on the basis of his membership in this protected class.

73. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

74. The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

75. As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and have suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

76. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT V
## RETALIATION IN VIOLATION OF TITLE VII

77. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

78. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

79. A respondeat superior relationship existed because Plaintiff's supervisors had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity, as alleged in the statement of facts.

80. Defendant's conduct, as alleged herein, violated Title VII which makes it unlawful to harass or retaliate against an employee for engaging in protected activity.

81. Plaintiff engaged in a protected activity, as more fully laid out in the statement of facts, including, but not limited to, when he consistently and continually brought to Human Resources' attention the unfair treatment he received due to being African American. Defendant was aware of the different treatment women received in Plaintiff's department.

82. Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because Plaintiff went issues directly to Human Resources.

83. After Plaintiff engaged in a protected activity, Defendant's agents thereafter harassed Plaintiff and took several adverse employment actions because of that activity, as alleged in the statement of facts and herein, subjecting Plaintiff to severe and pervasive retaliatory harassment by a supervisor, culminating all the way to the termination of Plaintiff.

84. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

85. Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

86. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

87. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

88. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VI
## RETALIATION IN VIOLATION OF THE ELCRA

89. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

90. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, the ELCRA.

91. A respondeat superior relationship existed because Plaintiff's supervisors had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

92. Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to retaliate against an employee who has engaged in protected activity.

93. Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including, but not limited to, when he consistently and continually brought Human Resources attention the specific issues with instances of racism in the workplace.

94. Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because Plaintiff complained directly to Human Resources and gave specific knowledge of issues directly to management and Human Resources; however, Human Resources failed to take any actions to remedy the same.

95. After Plaintiff engaged in protected activity, Defendant's agents thereafter harassed Plaintiff and took several adverse employment actions because of that activity, as alleged in the statement of facts and herein, subjecting Plaintiff to severe and pervasive retaliatory harassment by a supervisor, culminating all the way to the termination of Plaintiff.

96. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

97. Plaintiff notified Defendant's agents of the unwelcomed conduct or communication; however, Defendants failed to remedy the same.

98. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

99. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

100. Plaintiff request relief as described in the Prayer for Relief below.

## RELIEF REQUESTED

PLAINTIFF, TIMOTHY HILL, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory and pecuniary damages in whatever amount to which Plaintiff is entitled;

2. Exemplary and/or punitive damages in whatever amount which Plaintiff is entitled;

3. An award of lost wages and the value of fringe benefits, past and future;

4. An award of interest, costs, and reasonable attorney fees; and

5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated:  March 30, 2022               Respectfully Submitted,

                                     /s/Carla D. Aikens
                                     Carla D. Aikens (P69530)
                                     CARLA D. AIKENS, P.L.C.
                                     *Attorneys for Plaintiff*
                                     615 Griswold Ste. 709
                                     Detroit, MI 48226
                                     carla@aikenslawfirm.com