UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY HILL,

      Plaintiff,

                                 Civil Case No. 22-10684

v.                              Honorable Linda V. Parker

OAK STREET HEALTH MSO LLC,

      Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (ECF NO. 12)

Plaintiff Timothy Hill ("Plaintiff") worked for Defendant Oak Street Health MSO LLC ("Defendant") from 2018 to 2020.  Plaintiff brings this civil rights lawsuit for discrimination he allegedly experienced in the course of his employment with Defendant, which occurred from the beginning of his employment through his termination.  In his Complaint, Plaintiff alleges the following claims: gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* ("Title VII") (Count I); gender discrimination in violation of the Michigan Elliot-Larsen Civil Rights Act, MICH. COMP. LAWS § 37.2101 *et seq.* ("ELCRA") (Count II); race discrimination in violation of Title VII (Count III); race discrimination in violation of the ELCRA (Count IV); retaliation

in violation of Title VII (Count V); and retaliation in violation of the ELCRA (Count VI).  (ECF No. 1.)

The matter is presently before the Court on Defendant's Motion to Dismiss, filed on September 22, 2022.  (ECF No. 12.)  The motion has been fully briefed. (ECF Nos. 14, 15.)  Finding the facts and legal arguments sufficiently presented by the parties, the Court is dispensing with oral argument with respect to the parties' motions pursuant to Eastern District of Michigan Local Rule 7.1(f).  For the reasons that follow, the Court is granting in part and denying in part Defendant's motion.

## I.  Factual Background

Defendant owns and operates community-based healthcare centers that service older adult patients receiving Medicare.  On January 12, 2018, Plaintiff, who is an African American male, was hired as an Outreach Associate.  As part of Plaintiff's role, he depended on leads from "welcome visits" to Defendant's facility, which consisted of potential clients arriving to receive a tour and a complimentary checkup by a physician.  Once these visits were completed, Outreach Associates would receive compensation, which Plaintiff alleges was "a crucial makeup of their pay."  (ECF No. 1 at Pg ID 2, ¶ 10.)  If Outreach Associates were unable to meet monthly goals of welcome visits from potential patients, this could "bar [them] from receiving a promotion."  (*Id.* ¶ 11.)

2

Beginning in January 2018 through March 2018, Plaintiff noticed that his Director, Lashawnda Denson, only provided leads for welcome visits to his colleagues who were women, as opposed to the men.  In March of 2019, Ms. Denson "removed Plaintiff from all events," which prevented him from obtaining new leads.  (*Id.* at Pg ID 3, ¶ 14.)  According to Plaintiff, events were "essential" because that is where associates were able to solicit leads.  (*Id.* ¶ 15.)  In April 2019, two of Plaintiff's female coworkers notified him that Ms. Denson provided them with patient leads in lieu of distributing them evenly among the employees. Additionally, Plaintiff alleges that Ms. Denson would work with another manager to assign women to events that were well-attended but assigned him to events that did not result in any leads.  Ms. Denson also took female employees to lunch, and according to Plaintiff, "intentionally excluded [him] from dining with the rest of the department."  (*Id.* ¶ 19-20.)

At numerous weekly meetings with Ms. Denson, Plaintiff notes that he "was coerced into believing that he was going to lose his job and that he should quit." (*Id.* ¶ 21.)  Plaintiff was also discouraged from seeking a promotion by Ms. Denson.  In January 2020, one of Plaintiff's co-workers missed her target goal from three consecutive months and did not receive a write-up.

In March 2020, Plaintiff was "verbally abused with racial slurs and physically assaulted," and after alerting management, there was no action taken on

3

his behalf. (*Id.* at Pg ID 4, ¶ 24.) Similarly, after Plaintiff notified Human

Resources ("HR"), there was no action taken. In August 2020, Plaintiff requested

a transfer because of the "unresolved racial incident but was denied." (*Id.* ¶ 28.)

The reasoning provided to Plaintiff for the denial was because "Demario Trent

thought about it over the weekend and decided against it." (*Id.* ¶ 28.) Next,

Plaintiff escalated his complaint to corporate and regional HR. On August 25,

2020, Plaintiff was terminated. On April 10, 2021, Plaintiff filed a charge of

discrimination with the U.S. Equal Employment Opportunity Commission

("EEOC") and received a right to sue letter on December 30, 2021. Plaintiff filed

the pending lawsuit before this Court on March 30, 2022.

## II.  Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of

the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134

(6th Cir. 1996). To survive a motion to dismiss, a complaint need not contain

"detailed factual allegations," but it must contain more than "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action . . .."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not

"suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Majestic Bldg. Maint., Inc. v. Huntington Bancshares Inc.*, 864 F.3d 455, 458 (6th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678.) Moreover, the plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668.

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir.

1989)).  A court that considers such matters must first convert the motion to

dismiss to one for summary judgment.  *See* FED. R. CIV. P 12(d).  However,

"[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the

[c]omplaint and any exhibits attached thereto, public records, items appearing in

the record of the case and exhibits attached to [the] defendant's motion to dismiss,

so long as they are referred to in the [c]omplaint and are central to the claims

contained therein."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430

(6th Cir. 2008).

## III.  Analysis

As an initial matter, Plaintiff responds to Defendant's motion to dismiss, in

many instances, by requesting leave from the Court to amend his Complaint to

correct any pleading deficiencies "as a matter of course."  (ECF No. 14 at Pg ID

88-93.)  However, a request to amend a complaint should be in a separate motion,

not embedded within the response brief.  *See Lewis v. Wheatley*, 528 F. App'x 466,

469 (6th Cir. 2013) (affirming the district court's denial of a request to amend as

futile when the plaintiffs requested to amend a complaint in their response to a

motion to dismiss, failed to file a separate motion "but sought such relief only in

the alternative", and did not provide "any additional factual allegations that they

would submit in an amended complaint".)  Once a motion to dismiss has been

filed, a plaintiff may, as a matter of course, amend a complaint within twenty-one

6

days after service of the motion.  *See* FED. R. CIV. P. 15(a)(1)(B).  Because Plaintiff

filed his response approximately forty-nine days later, which is well beyond the

twenty-one day deadline, Plaintiff is not entitled to file an Amended Complaint as

a matter of course.  However, because Plaintiff asserts what his amendments would

be if provided the opportunity to amend, the Court will read the Complaint as if an

amendment were granted.

**A.    Untimely Claims**

**1.  *Statute of Limitations for Title VII Claims***

Defendant maintains that under Title VII, "any allegations relating to

discrete employment actions taken on or before June 14, 2020, are untimely" and

cannot be considered when determining whether Plaintiff pled sufficient facts to

survive a 12(b)(6) motion.  (ECF No. 12 at Pg ID 56-57.)  As a general rule,

plaintiffs must file a charge of discrimination with the EEOC within 180 days of an

alleged discriminatory action.  42 U.S.C. § 2000e-5(e)(1).  In "deferral states" such

as Michigan—where state agencies have a work-sharing agreement with the

EEOC—plaintiffs have 300 days from the alleged unlawful acts to file a charge of

discrimination for purposes of Title VII.  *See Logan v. MGM Grand Detroit

Casino*, 939 F.3d 824, 828 (6th Cir. 2019).  Any unlawful conduct alleged under

Title VII that occurs outside of the 300-day window is time-barred.  *See Epps-*

*Milton v. Genesee Intermediate Sch. Dist.*, No. 14-11861, 2014 WL 5817015, at *6

(E.D. Mich. Nov. 10, 2014).

In support of Plaintiff's claims of discrimination and retaliation, Plaintiff

makes the following allegations:

- Ms. Denson only provided leads for welcome visits to Plaintiff's colleagues who were women, as opposed to the men. (January 2018 through March 2018)
- Ms. Denson "removed Plaintiff from all events," which prevented him from obtaining new leads.  (March 2019)
- Two of Plaintiff's female coworkers notified him that Ms. Denson provided them with patient leads in lieu of distributing them evenly among the employees. (April 2019)
- Ms. Denson assigned women to events that were well-attended and assigned Plaintiff to events that did not result in any leads. (sometime in 2019)
- Ms. Denson took female employees to lunch, and "intentionally excluded Plaintiff from dining with the rest of the department." (sometime in 2019)
- Ms. Denson made Plaintiff believe that he would lose his job or that he should quit.  Ms. Denson also discouraged Plaintiff from seeking a promotion. (sometime in 2019)
- One of Plaintiff's co-workers missed her target goal for three consecutive months and did not receive a write-up. (January 2020)
- Plaintiff was verbally assaulted with racial slurs and physically assaulted, and after notifying HR, did not receive any relief. (March 2020)

Plaintiff filed a charge with the EEOC alleging related claims on April 10,

2021. Given the timing of Plaintiff's charge, any discriminatory incidents that

occurred prior to June 14, 2020 fall outside of the Title VII 300-day filing period in

deferral states. Accordingly, Plaintiff's Title VII claims prior to June 14, 2020 are

8

time-barred and will not be considered by the Court.  *See Epps-Milton*, 2014 WL
5817015, at **5-6.

### 2.  *Statute of Limitations for ELCRA Claims*

A discrimination claim under the ELCRA must be filed within three years of
the time it accrued.  MICH. COMP. LAWS § 600.5805(10); *Garg v. Macomb Cnty.
Cmty. Mental Health Servs.*, 696 N.W.2d 646, 655 (Mich. 2005).  Further, an
ELCRA claim accrues on the date the alleged discriminatory act occurred.  *See*
MICH. COMP. LAWS § 600.5827; *see also Joliet v. Pitoniak*, 715 N.W.2d 60 (Mich.
2006) (holding that absent an allegation of discriminatory discharge, a claim does
not accrue on the last day of employment, but rather on the date the alleged
discriminatory act occurred.)  As such, the only claim that would be untimely
under the ELCRA is Plaintiff's claim that Ms. Denson only provided leads for
welcome visits to his colleagues who were women, as opposed to the men, which
occurred in January 2018 through March 2018.

## B.  Failure to Exhaust Administrative Remedies

Defendant maintains that Plaintiff's federal gender and racial discrimination
claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6)
because he failed to exhaust his administrative remedies.  (ECF No. 12 at Pg ID
57.)  Congress provided the EEOC with initial enforcement responsibilities in the
procedures for challenging unlawful employment discrimination under Title VII.

*See Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010).  As such, an employee who alleges employment discrimination under Title VII must first file a timely administrative charge with the EEOC, and the charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Id.* (quoting 29 C.F.R. § 1601.12(b)).  However, "because aggrieved employees—and not attorneys—usually file charges with the EEOC, their *pro se* complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Id.* (citing *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006)).  In other words, "whe[n] facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998).

Plaintiff's EEOC charge of discrimination reads as follows:

> I began working for the above named employer on or about January 12, 2018, as an Outreach Associate. I was last employed as an Outreach Associate/Account Executive.
>
> On or about January [sic] March 2018, the Director gave female Caucasian co-workers leads to help them make productivity to avoid write ups. On or about June 2020, I applied for a position of promotion and was denied on or about August 13, 2020. On or about August 2020, I applied for a transfer and was denied. Other female Caucasian co-workers were granted transfers. I

10

complained to management.   On or about August 25, 2020, I was terminated from my position.

I believe I was subjected to different terms/conditions, denied promotion, due to my sex, male, and my race, African American; and discharged in retaliation for participating in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amend. [sic]

(Ex. A., ECF No. 12-1 at Pg ID 73.)

The facts that remain in this case to support Plaintiff's Title VII claims of race discrimination (Counts III and IV) involve the following: (1) Plaintiff's denial of his transfer application due to "unresolved racial incident" in August of 2020, and (2) Plaintiff's subsequent termination on August 25, 2020.  Even if the allegation of racially motivated verbal and physical assault was not time-barred, Plaintiff failed to allege it in the EEOC charge, and the facts listed would not prompt the EEOC to investigate such a drastically different claim.  Because Plaintiff failed to allege the racial incident in his EEOC charge, he did not exhaust his administrative remedies for his race discrimination claim.  Thus, the Court is dismissing the racial discrimination claim under Title VII (Count III).

Defendant also maintains that although not originally alleged in the EEOC charge, "Plaintiff *now* pleads his [sic] gender discrimination under Title VII as a hostile work environment claim."  (ECF No. 12 at Pg ID 59 (emphasis added).) "In order to establish a claim of hostile work environment ... a plaintiff must present evidence of harassment that 'unreasonably interfer[es] with [his] work

performance and creat[es] an objectively intimidating, hostile, or offensive work environment.' " *Younis*, 610 F.3d at 362 (citing *Grace v. USCAR,* 521 F.3d 655, 678 (6th Cir. 2008)).  However,  an "EEOC charge of a discrete act or acts, standing alone, is insufficient to establish a hostile-work-environment claim for purposes of exhaustion" *Id.*; *see e.g., Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 475 (6th Cir. 2008) ("[The plaintiff] failed to exhaust her hostile environment claim, as she offered no evidence that the EEOC actually investigated this claim or that such claims could reasonably be expected to grow out of the charge.").

Here, the EEOC charge of discrimination contains merely discrete acts by the Defendant, but more importantly, it contains no allegations from which a hostile-work-environment claim based on sex could be reasonably inferred.  *See Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) ("Discrimination in this form occurs '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' ")  The hostile work environment claim based on sex under Title VII (Count I) is therefore dismissed for failure to exhaust administrative remedies.  *See Jones v. City of Franklin*, 309 F. App'x 938, 943–44 (6th Cir. 2009) (observing that "[n]o decision in this circuit

has held that EEOC charges regarding discrete acts of discrimination are alone

sufficient to put the EEOC on notice of a hostile-work-environment claim").

Regarding the ELCRA claims, they are not subject to the same

administrative procedures required under Title VII.  Specifically, there is no

administrative exhaustion requirement under the ELCRA.  *See Rogers v. Bd. of*

*Educ. of Buena Vista Sch.*, 2 F.3d 163, 168 (6th Cir. 1993); *Fuller v. Michigan*

*Dep't of Transp.*, 580 F. App'x 416, 425 (6th Cir. 2014); *Mollett v. Taylor*, 494

N.W.2d 832, 839 (Mich. Ct. App. 1992).  The gender and race discrimination

claims under the ELCRA (Counts II and IV) therefore survive the exhaustion

requirement despite the dismissal of Plaintiff's Title VII claims.

**C.     Discrimination Claims under the ELCRA**

Defendant maintains that Plaintiff fails to plead plausible facts to state a

claim of discrimination based on race or sex under Title VII or the ELCRA.

Because Plaintiff's race and sex discrimination claims under Title VII are

dismissed for failure to exhaust, the Court will only address the race and sex

discrimination claims under the ELCRA here.

Section 202 of ELCRA provides that "[a]n employer shall not ... [f]ail or

refuse to hire or recruit, discharge, or otherwise discriminate against an individual

with respect to employment, compensation, or a term, condition, or privilege of

employment, because of religion, race, color, national origin, age, sex, height,

weight, or marital status." MICH. COMP. LAWS § 37.2202(1)(a).  Generally, "[c]ases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in Title VII cases."  *See Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 652 (6th Cir. 2012) (citing *In re Rodriguez,* 487 F.3d 1001, 1007 (6th Cir. 2007)).

### 1. *Race Discrimination Claim (Count IV)*

"Absent direct evidence of discrimination, claims brought pursuant to . . . the Elliot–Larsen Act are subject to the tripartite burden-shifting framework first announced by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973), and subsequently modified in *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981)."  *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008).  To demonstrate a prima facie case of employment discrimination based on race, a plaintiff must show that "(1) he is a member of a protected group; (2) [he] was subjected to an adverse employment decision; (3) [he] was qualified for the position; and (4) [he] was replaced by a person outside the protected class, *or* a similarly situated non-protected employee was treated more favorably." *Corell v. CSX Transp., Inc.*, 378 F. App'x 496, 501 (6th Cir. 2010) (citing *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004)); *McDonnell Douglas Corp.*, 411 U.S. at 802.

Plaintiff has not alleged sufficient facts on the face of the Complaint for the court to infer racial discrimination. *See Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 780 (6th Cir. 2016) (citing *Burdine*, 450 U.S. at 256) (the burden is on the plaintiff to create a reasonable inference of discrimination). Plaintiff satisfies the first two prongs as he is a member of a protected group as an African American male and suffered adverse employment actions in the form of his transfer denial and subsequent termination.  Regarding prong three and four, Defendant maintains that Plaintiff did not allege in his Complaint that he was "qualified for the position he held or the position he wanted to transfer into or that he was treated differently than non-African American employees by his supervisor . . . ."  (ECF No. 12 at Pg ID 61.)  The Court disagrees with Defendant's assertion about Plaintiff's failure to plead that he was treated differently than non-African American employees.  In the EEOC charge of discrimination, Plaintiff clearly alleges that "the Director gave female Caucasian co-workers leads to help them make productivity to avoid write ups" and that "[he] applied for a transfer and was denied. Other female Caucasian co-workers were granted transfers." (ECF No. 12-1 at Pg ID 73.)  Provided the opportunity to amend his Complaint, Plaintiff surely would have alleged, as he already stated to the EEOC, the specific instances of differential treatment.

15

In response to Defendant's assertion about Plaintiff's qualifications, he argues that "it can be inferred" that he is qualified because he was employed for two years.  However, the Court does not agree that an inference of qualification can be drawn by an individual's length of employment as such, is not willing to put meat on such a bare-bones assertion.  *See Jirjis v. Wachovia*, No. 10-11728, 2011 WL 87247, at *5 (E.D. Mich. Jan. 11, 2011) ("[B]are-bones allegations are plainly insufficient to survive a 12(b)(6) motion to dismiss.").  Even taking into consideration Plaintiff's proffered amendment to his Complaint that "[h]e was qualified for his job," ECF No. 14 at Pg ID 91, this would not cure the deficiency. As the Supreme Court noted in *Twombly*, to withstand a motion to dismiss, a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  As such, Plaintiff did not plead sufficient facts for an inference of employment discrimination based on his race under the ELCRA.  The Court therefore dismisses Count IV of the Complaint.

**2.** *Hostile Work Environment Based on Sex (Count II)*

A violation of Title VII may be established by proving that the discrimination based on sex created a hostile or abusive work environment. *Williams*, 187 F.3d at 560 (citing *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 66 (1986); *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 825 (6th Cir.) *cert. denied*, 522

16

U.S. 865 (1997).  To establish a prima facie case of hostile work environment

based on sex, a plaintiff must show that "(1) [he] is a member of a protected

class[], (2) [he] was subjected to harassment, either through words or actions,

based on sex, (3) the harassment had the effect of unreasonably interfering with

[his] work performance and creating an objectively intimidating, hostile, or

offensive work environment; and (4) there exists some basis for liability on the part

of the employer." *Grace*, 521 F.3d at 678.  Importantly, the harassment must meet

both an objective and subjective test, or "in other words, the conduct must be so

severe or pervasive as to constitute a hostile or abusive working environment both

to the reasonable person and the actual victim." *Randolph*, 453 F.3d at 733.

Plaintiff claims that Ms. Denson only provided leads for welcome visits to

his colleagues who were women, as opposed to men, between January 2018 and

March 2018.  Although Plaintiff's claim is untimely under the ELCRA, he is not

prevented from using otherwise time-barred incidents as "background evidence to

establish a pattern of discrimination" of a timely claim.  *Harwood v. N. Am.*

*Bancard LLC*, No. 18-CV-12567, 2020 WL 2065480, at *11 (E.D. Mich. Apr. 29,

2020); *Campbell v. Dep't of Human Servs.*, 780 N.W.2d 589, 592 (Mich. Ct. App.

2009).  Other claims that support Plaintiff's claim of harassment based on sex

involve the following: (1) two female coworkers notified Plaintiff that Ms. Denson

provided them with patient leads in lieu of distributing them evenly among the

17

employees; (2) Ms. Denson assigned women to events that were well-attended and assigned Plaintiff to events that did not result in any leads; and (3) Ms. Denson took female employees to lunch, and "intentionally excluded Plaintiff from dining with the rest of the department." (ECF No. 1 at Pg ID 3, ¶ 20.) Based on the face of the Complaint and viewing the facts most favorable to Plaintiff, a reasonable person would not view any of these instances as severe or pervasive; they would fall under workplace civility and poor employment practices at best. *See e.g., Burnett v. Tyco Corp.*, 203 F.3d 980, 982 (6th Cir. 2000) (quoting *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 80 (1998) ("Title VII is not 'a general civility code for the American workplace.' "). As such, Plaintiff has failed to sufficiently plead facts to state a plausible claim for a hostile work environment based on sex, and the Court is dismissing Count II of the Complaint.

**D.    Retaliation Claims (Counts V and VI)**

Defendant maintains that Plaintiff has failed to plead facts to support his retaliation claim under Title VII or the ELCRA. To demonstrate a prima facie case of retaliation under Title VII or the ELCRA, an employee must allege "(1) he ... engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action." *Laughlin v. City of Cleveland*, 633 F. App'x

18

312, 315 (6th Cir. 2015) (quoting *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008)); *Garg*, 696 N.W.2d at 653.  To satisfy the causal connection requirement, a plaintiff must show that "but-for [his] protected activity, [his] employment would not have been terminated." *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 349 (6th Cir. 2021).  "At the prima facie stage, this burden 'is not onerous,' and can be met through 'evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights.' " *George v. Youngstown State Univ.*, 966 F.3d 446, 460 (6th Cir. 2020) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)).

Defendant maintains that Plaintiff's complaint to management about the "racial incident" without more detail does not qualify as a 'protected activity' under Title VII.  (ECF No. 12 at Pg ID 67.)  Courts recognize that "opposing *any* practice that the employee reasonably believes to be a violation of Title VII" constitutes protected activity.  *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000) (emphasis added); *see also Jackson*, 999 F.3d at 344–45 (6th Cir. 2021) (a complaint to management about discriminatory employment practices can constitute protected activity).  Although a plaintiff need not make a complaint "with absolute formality, clarity, or precision," the complaint must go beyond a "vague charge of discrimination." *Jackson,* 999 F.3d at 345 (quoting *Yazdian v.*

*ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 645 (6th Cir. 2015)).  Thus, Plaintiff's complaint to management does in fact rise to the level of a protected activity.

Further, the fact that Plaintiff's termination occurred five days after he complained to the regional HR department satisfies the pleading requirement for retaliation at the motion to dismiss stage.  Notwithstanding Defendant's argument that the causal relationship between the report and the termination was attenuated due to a "loose temporal proximity" of two to five months, ECF No. 12 at Pg ID 69, the relevant protected activity—not Plaintiff's initial complaint in March but the notification to corporate/regional HR in August—occurred merely five days prior to Plaintiff's termination.  (ECF No. 14 at Pg ID 87.)  "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation."  *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505 (6th Cir. 2014) (citing *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008); *see, e.g., McNett v. Hardin Cmty. Fed. Credit Union*, 118 F. App'x 960, 965 (6th Cir. 2004) (finding causation when "only 13 days" separated protected activity from adverse action, reasoning that an "employer's knowledge of the protected activity coupled with an adverse action occurring close

20

in time can create an inference of causation where the particular circumstances strengthen the inference of causation"); *Shefferly v. Health Alliance Plan of Mich.*, 94 F. App'x 275, 285 (6th Cir. 2004) (stating that "the passage of less than three weeks between [the employer's] receipt of the charges and the adverse actions gives rise to an inference of discrimination" and "[t]herefore, in this case, [the plaintiff] has established a prima facie case of retaliation").

## IV.  Conclusion

For the reasons stated above, the Court is dismissing Counts I, II, III, and IV of the Complaint.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (ECF No. 12) is **GRANTED IN PART** as to Plaintiff's racial discrimination and sex discrimination claims under Title VII and the ELCRA and **DENIED IN PART** as to Plaintiff's retaliation claims under Title VII and the ELCRA.

**IT IS FURTHER OREDERED** that Counts I, II, III, and IV are **DISMISSED**.  Counts V and VI may proceed with litigation.

**SO ORDERED**.

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: June 27, 2023

21